1

2

3

4

5

6

7

8 **UNITED STATES DISTRICT COURT**

9 **CENTRAL DISTRICT OF CALIFORNIA**

10

11 ROLAND VAUGHAN, an Individual,          Case No. 2:19-cv-00336-R-SKx

12              Plaintiff,               **FIRST AMENDED COMPLAINT**

13        v.

14 COUNTY OF LOS ANGELES, a
   Public Entity; and DOES 1-50,
15 Inclusive,

16              Defendants.

17

18

19                                    **I.**
                             **INTRODUCTION**

20        1.      This is a case about broken promises. Defendants COUNTY OF LOS

21 ANGELES and Sheriff's Deputies and Personnel, Defendants ANTHONY J.

22 LASCANO (#531103[1]), JI Y. YU (#470249), CHRIS Y. LEE (#623671), ROBERT

23 SAKO (#636469), and DOE DEFENDANTS 1-3 and 26-50, acting with deliberate

24 indifference, broke their promise under the United States and California Constitutions

25 to protect Plaintiff, Roland Vaughan, from harm while he was housed as a pretrial

26

27 ─────────────────────
   [1] The numbers refer to the individual Defendant's employee number with the County
28 of Los Angeles.

detainee at Men's Central Jail. As a result, he was savagely beaten by other inmates on September 30, 2017.

2.      Further, said Defendants broke another promise when they refused to summon medical aid for Plaintiff in the days following the assault, resulting in the development of necrotizing fasciitis in Plaintiff's right arm, ultimately requiring the removal of his skin from his elbow to his knuckles, and the grafting of skin from his thigh.

3.      Worse yet—Defendants broke these promises owed under the Constitution to a man who, in Plaintiff, is a decorated combat veteran, who fought and nearly died for this Country and the guarantees the Constitution is meant to provide.

4.      As a result, Plaintiff has been badly injured, and permanently disfigured, and now by this Complaint seeks compensation to remedy the violations herein alleged.

## II.
## PARTIES

5.      Plaintiff is Roland Vaughan ("PLAINTIFF"). He is a resident of the County of Los Angeles. Plaintiff served his Country as an infantryman with the Army Rangers from 2005 to 2010. He fought in Iraq and Afghanistan in the Global War on Terror. He was nearly killed during his combat service when an IED near him exploded. For his service and sacrifice Plaintiff received the Army Commendation Medal, the Purple Heart, Army Good Conduct Medal, National Defense Service Medal, Afghanistan Campaign Medal with Two Campaign Stars, Global War on Terrorism Service Medal, Iraq Campaign Medal with Combat Star, Army Service Ribbon, and the Combat Infantryman Badge. After being honorably discharged from the US Army, Plaintiff attained a college degree and went to work as a photographer and videographer for the Combat Wounded Veterans Challenge. Plaintiff is currently housed in the California Dept. of Corrections and Rehabilitation at Sierra

1   Conservation Center in Jamestown, California, and is expected to be released in the

2   end of 2019.

3       6.    Defendant, the County of Los Angeles ("COUNTY"), is a public entity

4   for the purposes of this action and in said capacity is responsible for and administers

5   the COUNTY Sheriff's Department ("LASD"), which in turn promulgates policies

6   and practices for the housing, custody, care, safe keeping, medical care and protection

7   of inmates in the COUNTY Detention Facilities including Men's Central Jail

8   ("MCJ").  COUNTY, through its component departments, and Jim McDonnell as

9   Sheriff of the COUNTY, runs, operates, oversees, administers, supervises,  and is

10  otherwise responsible for the conduct of LASD in COUNTY facilities, including both

11  the acts and omissions of  LASD and other detention facility workers, including but

12  not limited to custody staff and medical personnel.  At all times COUNTY possessed

13  the power and authority to adopt policies and prescribe rules, regulations and practices

14  affecting all facets of the training, supervision, control, employment, assignment and

15  removal of individual members of the LASD, including those individuals charged

16  with protecting the health and safety of inmates at COUNTY Detention facilities,

17  including PLAINTIFF and to assure that said actions, policies, rules, regulations,

18  practices and procedures of the LASD and its employees and agents comply with the

19  laws and constitutions of the United States and of the State of California.

20      7.    DOES 1 through 3 are and were LASD officials and supervisors during

21  all relevant times herein, and at all times possessed the power and the authority and

22  were charged by law with the responsibility to enact policies and to prescribe rules

23  and  practices  concerning  the  operation  of  the  COUNTY  Detention  facilities,

24  including MCJ, and concerning the means by which the life, health and safety of

25  inmates were to be secured, the manner in which complaints regarding an inmate's

26  health and safety were to be evaluated and acted upon, and what safeguards were in

27  place to treat and/or care for inmates with medical conditions.

28      8.    At all times relevant herein, Defendants ANTHONY J. LASCANO

(#531103[2]), JI Y. YU (#470249), CHRIS Y. LEE (#623671), and ROBERT SAKO (#636469) were and are deputies and peace officers, agents or employees of Defendant COUNTY and LASD and were at all times relevant to this action acting in the course and scope of their employment and agency. They were actively engaged in employment at MCJ located at 441 Bauchet Street, Los Angeles, California 90012, during the time period of September 30, 2017, through October 10, 2017, and in this capacity were empowered to act under the color of law to assure for Plaintiff's safety and well-being during his incarceration. Upon information and belief, Defendants ANTHONY J. LASCANO (#531103), JI Y. YU (#470249), CHRIS Y. LEE (#623671), and ROBERT SAKO (#636469), and each of them, reside in the County of Los Angeles or within this Court's judicial district.

9.     At all times relevant hereto, DOE DEFENDANTS 26 through 50 were and are LASD personnel, nurses, pill call employees, and/or medical professionals employed, hired, and/or retained by the COUNTY to respond to medical needs of inmates and summon and/or administer medical treatment to inmates at MCJ, and said Defendants were at all times relevant to this action acting in the course and scope of their employment and agency during the time period of September 30, 2017, through October 10, 2017.  Said Defendants were empowered to act under the color of law to respond to reports, complaints and requests for treatment and safe housing from Plaintiff, including complaints and requests for treatment of health conditions.

10.     At all times relevant hereto, Defendants DOES 1 through 3 were the chief policy makers for COUNTY and the LASD relative to MCJ as alleged herein, were employed by COUNTY defendant as administrators, police officers, sheriffs, or in other capacities as yet undetermined and in doing the acts alleged acted within the course and scope of their employment under color of law.

---

[2] The numbers refer to the individual Defendant's employee number with the County of Los Angeles.

11. All defendants named herein committed the above alleged acts while acting within the scope and course of their employment under color of law.

12. At all times mentioned herein, defendant Los Angeles COUNTY, through the LASD was charged with the supervision, management, control, operation and administration of LASD, including the responsibility for the control, supervision, training, employment, assignment and removal of police officers at LASD and at MCJ where the acts alleged took place.

13. At all times relevant to this case, and as regards all acts and omissions relevant to this case, Defendants and each of them, were agents, servants, and employees of their co-defendants and in doing the things alleged were acting within the scope of their authority as agents, servants and employees and with the permission, consent, ratification and condonation of their co-defendants.

14. Plaintiff is ignorant of the true names and capacities of defendants sued herein as DOES 1 through 3 and 26 through 50, inclusive. Plaintiff will amend this complaint to allege their true names and capacities when ascertained or when this Court permits said amendment.

15. Plaintiff is informed and believes and thereon alleges that each said fictitiously named defendant is responsible in some manner for the occurrences herein alleged and that Plaintiff's injuries and damages as herein alleged were proximately caused by the negligence, deliberate indifference and/or reckless or intentional wrongful and tortious conduct of such defendants.

### III.
### JURISDICTION & VENUE

16. This action is brought pursuant 42 U.S.C. §§ 1983 and 1988, and the Fourteenth Amendment of the United States Constitution, as well as under California law as to Plaintiff's causes of action in tort.

17. The Court has personal jurisdiction over the Defendants in this case because they are residents of and/or doing business in the State of California, County

1   of Los Angeles.

2       18.     As a Court of general jurisdiction, this Court has subject matter
3   jurisdiction over Plaintiff's claims arising under Federal and California law.

4       19.     Venue is proper in this Court because all parties to this action reside
5   within the County of Los Angeles, and the acts and omissions giving rise to Plaintiff's
6   claims took place within the jurisdictional boundaries of this Court.

7       20.     This is an unlimited civil case as defined in California Code of Civil
8   Procedure §§ 85, et seq.

**IV.**
**FACTS COMMON TO ALL CAUSES OF ACTION**

9
10      21.     On February 5, 2017, Plaintiff was arrested in Antelope Valley, County
11  of Los Angeles, after he was involved in a motor vehicle accident. Plaintiff was
12  driving home with his fiancée while intoxicated. As he took a left turn onto a side
13  street toward his home, a motorcycle approaching in the oncoming lane struck his
14  right front quarter panel. The motorcyclist died as a result of the crash. Plaintiff was
15  booked and initially charged with Murder.
16
17      22.     Plaintiff was transferred to MCJ while awaiting trial.

18      23.     During Plaintiff's booking he was given a medical evaluation. Aside
19  from the injuries he suffered from and IED blast as an infantryman in the Army,
20  Plaintiff was healthy. Specifically, Plaintiff did not have an infection in his right arm
21  and Plaintiff had full function of his right arm.

22      24.     As a pretrial detainee at MCJ, Plaintiff's housing designation was "EBI"
23  (Education Based Incarceration), sometimes referred to by inmates as the "Veteran's
24  Dorm."

25      25.     On September 30, 2017, Plaintiff and a small group of inmates in EBI
    were on the roof at MCJ for exercise.
26
27      26.     Unbeknownst to Plaintiff at that same time, a riot broke out in the MCJ
28  dormitory housing the SNY (Special Needs Yard) inmates. SNY inmates commonly

1 | include homosexuals and other inmates requiring special classification and separation
2 | from general population.

3 |      27.    The rioting SNY inmates were pepper sprayed by LASD custody
4 | deputies, who then ushered the SNY inmates to the roof where they were placed on
5 | the other side of a partition from Plaintiff and the EBI inmates.

6 |      28.    In total there were approximately 98 SNY inmates relocated to the roof.
7 | Plaintiff and the EBI inmates composed a much smaller group of approximately 10-
8 | 15 inmates.

9 |      29.    LASD custody employees, including Defendants ANTHONY J.
10 | LASCANO (#531103), JI Y. YU (#470249), CHRIS Y. LEE (#623671), and
11 | ROBERT SAKO (#636469)DEFENDANTS ANTHONY J. LASCANO (#531103),
12 | JI Y. YU (#470249), CHRIS Y. LEE (#623671), AND ROBERT SAKO (#636469),
13 | then left the roof and left the rioting SNY inmates alone and unmonitored with the
14 | EBI inmates.

15 |      30.    After deputies left, the SNY inmates broke through the partition and
16 | proceeded to assault and savagely beat the EBI inmates, including Plaintiff.

17 |      31.    Despite the fact that the assault went on for many minutes, between 10
18 | and 20 minutes, approximately, not a single LASD deputy or custody employee,
19 | including DEFENDANTS ANTHONY J. LASCANO (#531103), JI Y. YU
20 | (#470249), CHRIS Y. LEE (#623671), AND ROBERT SAKO (#636469), arrived at
21 | the roof to intervene and protect Plaintiff and the other EBI inmates.

22 |      32.    The assault was also being recorded on MCJ's CCTV video system.
23 | Plaintiff knows this because in the days following the assault several LASD deputies,
24 | names currently unknown, were observed re-watching the beating, and laughing at
25 | Plaintiff while remarking that Plaintiff "got his ass beat by a bunch of homos."

26 |      33.    Despite the fact that video cameras were recording the assault, still, not
27 | a single LASD deputy or custody employee, including DEFENDANTS ANTHONY
28 | J. LASCANO (#531103), JI Y. YU (#470249), CHRIS Y. LEE (#623671), AND

ROBERT SAKO (#636469), arrived at the roof to intervene and protect Plaintiff and the other EBI inmates

34.    Plaintiff suffered injuries from the assault, including a swollen and black left eye, several cuts and scratches on his neck, arms, and hands, swollen knots on his head, bruised jaw and soreness throughout his body, and an abrasion to his right arm near his elbow.

35.    The abrasion started to become infected and severely painful.

36.    On several occasions over the following days Plaintiff sought medical attention for his arm, but was denied by DOE DEFENDANTS 26-50.

37.    Plaintiff asked repeatedly to visit medical to have blood tests conducted. Midway through the week, he was brought to medical for a blood draw. He was told that he would only be contacted if he "had something to worry about."

38.    On October 4, 2017, Plaintiff was seen by a nurse because he was concerned about getting infection from the blood that "was everywhere" during the assault. He was sent to get an STD evaluation, but his injury to his arm was not evaluated.

39.    On October 7, 2017, Plaintiff specifically recalls desperately asking a "Deputy Prado", full name currently unknown, for a pass to medical. He was denied.

40.    Also on October 7, 2017, Plaintiff specifically recalls asking a "Ms. Gutierrez", full name currently unknown, for a pass to medical. He was denied.

41.    On October 8, Plaintiff was seen by a nurse. He complained again about the infection in his arm. The nurse noted "severe swelling with erythema and warmth." She submitted a referral for Plaintiff to see urgent care.

42.    Finally, on October 9, 2017, Plaintiff was sent to the Urgent Care Center. He was then sent by patrol car to the hospital and admitted on October 10, 2017. At the hospital, Plaintiff was diagnosed with necrotizing fasciitis, and told that he needed immediate surgery, and that there was a 50% chance that he would not survive.

43.    Doctors removed all the skin to the muscle on Plaintiff's right arm

between his elbow and his knuckles and debrided the necrotic tissue. Surgeons then grafted skin from Plaintiff's upper thigh onto the wound. The weeks of procedures were incredibly painful. Plaintiff was discharged from the hospital on October 23, 2017.

44.     To this day, Plaintiff suffers from permanent disfigurement of his right arm, neuropathy, pain, and lack of mobility and ability to use his right hand, tingling and numbness.

## V.
## COMPLIANCE WITH GOVERNMENT CLAIMS ACT

45.     Plaintiff submitted a government tort claim concerning the above allegations to COUNTY on February 28, 2018.

46.     Plaintiff received a denial on April 16, 2018.

## FIRST CAUSE OF ACTION

### VIOLATION OF CIVIL RIGHTS – 42 U.S.C. § 1983
### DEFENDANTS ANTHONY J. LASCANO (#531103), JI Y. YU (#470249), CHRIS Y. LEE (#623671), ROBERT SAKO (#636469), AND DOE DEFENDANTS 1-3, 26-50

47.     PLAINTIFF incorporates all the foregoing paragraphs herein by this reference.

48.     This cause of action arises under United States Code Title 42, Section 1983, wherein PLAINTIFF seeks to redress a deprivation under color of law of a right, privilege, or immunity secured him by the Fourteenth Amendment to the United States Constitution and under the laws of the Constitution of the State of California. Additionally, by reason of all the  foregoing and following allegations, Plaintiff was required to retain counsel to institute and prosecute this action and to render legal assistance and advice that he may properly vindicate the loss and impairment of his rights, Plaintiff requests and is entitled to a reasonable sum of attorney's fees pursuant to 42 U.S.C. Section 1988.

49.     On or before September 30, 2017, there existed within the LASD: (1) an

administrative manual; (2) a written compilation of policies and procedures; and (3) orally conveyed department policies, regarding the issues of the safety, health and welfare of inmates at MCJ, including but not limited to issues regarding: (1) the classification of inmates to avoid mingling violent and non-violent offenders; (2) the duties regarding monitoring of violent inmates; (3) the separation of inmates to avoid mingling violent and non-violent factions of inmates; (4) the prevention of inmate on inmate violence; and (4) the provision of medical services to obviously hurt, injured and/or incapacitated inmates.

50.     On September 30, 2017, said Defendants ANTHONY J. LASCANO (#531103), JI Y. YU (#470249), CHRIS Y. LEE (#623671), ROBERT SAKO (#636469), and DOE DEFENDANTS 1-3, 26-50 acting in conscious and reckless disregard for Plaintiff's rights and in complete derogation of their responsibilities, did under color of law, knowingly and/or intentionally engage in the following acts and omissions among others:

   a. Defendants ANTHONY J. LASCANO (#531103), JI Y. YU (#470249), CHRIS Y. LEE (#623671), and ROBERT SAKO (#636469) intentionally and with deliberate indifference to Plaintiff's life and safety placed Plaintiff, a non-violent offender, with violent inmates who said deputies knew or should have known would violently and predictably beat him; and/or

   b. Defendants ANTHONY J. LASCANO (#531103), JI Y. YU (#470249), CHRIS Y. LEE (#623671), and ROBERT SAKO (#636469) intentionally and with deliberate indifference to Plaintiff's life and safety placed a large group of approximately 98 inmates who had been rioting and were acting violently, in close proximity to Plaintiff, a non-violent offender, with nothing but a fence separating them, and then left the groups of inmates alone without monitoring or supervision, despite knowing or having

1    reason to know that this would immediately place Plaintiff's life

2    in immediate danger; and/or

3       c.  Defendants ANTHONY J. LASCANO (#531103), JI Y. YU

4          (#470249), CHRIS Y. LEE (#623671), and ROBERT SAKO

5          (#636469) intentionally and with deliberate indifference to

6          Plaintiff's life permitted inmates to assault Plaintiff for

7          approximately 10-20 minutes without intervening, despite

8          knowing or having reason to know that this would immediately

9          place Plaintiff's life in immediate danger; and/or

10      d.  DOE DEFENDANTS 1-3 negligently staffed and trained jail

11        personnel at Los Angeles County jail facilities in such a manner

12        that allowed for unmonitored and unsupervised inmate-on-inmate

13        violence on September 30, 2017, that could have been easily been

14        avoided by personnel staffing and training decisions.   These

15        staffing and training decisions completely ignored industry

16        standards in said staffing and training and informed, or should

17        have informed DOE DEFENDANTS 1-3 that their decisions

18        would put persons like Plaintiff in immediate danger to his health

19        and safety; and/or

20      e.  DOE DEFENDANTS 26-50 intentionally and/or with deliberate

21        indifference ignored Plaintiff's obvious need of medical

22        assistance, care and treatment and allowed Plaintiff to go untreated

23        so as to knowingly or recklessly cause his injuries.

24       51.    In this manner, Defendants ANTHONY J. LASCANO (#531103), JI Y.

25  YU (#470249), CHRIS Y. LEE (#623671), ROBERT SAKO (#636469), and DOE

26  DEFENDANTS 26-50, under color of law, failed to protect Plaintiff's life, health and

27  safety, to which protection Plaintiff had a constitutional right, and thereby caused

28  Plaintiff's physical injuries resulting in his present physical state.   DEFENDANTS

acted as they did in part because they knew or were otherwise aware that they would receive no discipline or punishment for their conduct and that their constitutionally violative conduct would otherwise be ratified and/or condoned by their superiors, including DOE DEFENDANTS 1-3.

52.    As a proximate result of the aforementioned acts and omissions of said Defendants and each of them, Plaintiff suffered injuries including the injuries attendant to the assault as well as permanent disfigurement of his right arm, neuropathy, pain, and lack of mobility and ability to use his right hand, tingling and numbness, and mental and emotional harm all to his damages in an amount to be proven at trial.

53.    The aforementioned acts by or omissions of the said individual Defendants ANTHONY J. LASCANO (#531103), JI Y. YU (#470249), CHRIS Y. LEE (#623671), ROBERT SAKO (#636469), and DOE DEFENDANTS 1-3, 26-50 and each of them were willful, wanton, malicious and oppressive, done with a conscious disregard for the rights of Plaintiff and constitute the type of despicable conduct that no civilized society should be forced to endure, and this conduct justifies the awarding of  exemplary and punitive damages against said individual DEFENDANTS.  This is especially true in light of the fact that Defendants knew or had reason to know of the inevitable results their misconduct would lead to.

**SECOND CAUSE OF ACTION**

**FAILURE TO INTERVENE – 42 U.S.C. § 1983**
**DEFENDANTS ANTHONY J. LASCANO (#531103), JI Y. YU (#470249), CHRIS Y. LEE (#623671), ROBERT SAKO (#636469), AND DOE DEFENDANTS 26-50**

54.    PLAINTIFF repeats and re-alleges each and every allegation contained above as though fully set forth herein.

55.    At all times relevant herein during all the failures and omissions relevant to Plaintiff's injuries, Defendants ANTHONY J. LASCANO (#531103), JI Y. YU

(#470249), CHRIS Y. LEE (#623671), ROBERT SAKO (#636469), and DOE DEFENDANTS 26-50, were present at MCJ and were charged with the Constitutional duties of protection of Plaintiff and were charged with the duty to not knowingly or with wanton disregard, cause his life, health and safety to be placed in danger by intentionally and deliberately ignoring the known dangers to Plaintiff that their actions and/or omissions placed him in.

56.     Defendants ANTHONY J. LASCANO (#531103), JI Y. YU (#470249), CHRIS Y. LEE (#623671), ROBERT SAKO (#636469), and DOE DEFENDANTS 26-50 were all in the position and authority to lawfully intervene in and prevent the unjustified and unwarranted exposure of Plaintiff to the life-threatening incarceration, physical, and medical conditions, which ultimately caused Plaintiff to suffer the injuries as alleged herein.

57.     Each said Defendant had ample and reasonably sufficient time and opportunity to so intervene and prevent Plaintiff's injuries, and was compelled to do so as a Sheriff's Deputy or employee under the laws of the State of California and under the Constitution of the United States of America.

58.     In deliberate indifference to the life and welfare of Plaintiff, each said Defendant intentionally and with deliberate indifference to the civil rights of Plaintiff, refrained from intervening in the acts leading to Plaintiff's injuries.

59.     As a result thereof, Plaintiff was unjustifiably, purposely, or recklessly and wantonly exposed to receiving the injuries he received at the hands of other inmates and ignored when he clearly was in need of medical treatment by said Defendants as alleged in the First Cause of action in violation of his rights under the Fourteenth Amendment of the Constitution of the United States of America.

60.     The acts and omissions constituting this cause of action were purposeful, malicious, and reckless and wanton so as to justify the imposition of punitive damages on these Defendants in their individual capacity.

**THIRD CAUSE OF ACTION**

**FAILURE TO TRAIN AND FAILURE TO SUPERVISE CAUSING CONSTITUTIONAL VIOLATION – 42 U.S.C. § 1983 DOE DEFENDANTS 1-3**

61.   PLAINTIFF repeats and re-alleges each and every allegation contained above as though fully set forth herein.

62.   Since on or about 1990 and at all relevant times mentioned in this Complaint, the COUNTY Board of Supervisors established and maintained an oversight and supervisorial role over the conduct of the Sheriff as it pertained to controlling the Sheriff's running of various aspects of the LASD. These activities theretofore had resulted in the deprivation of the constitutional rights of the citizens of the COUNTY, including inmates at COUNTY's jail facilities such as MCJ. The Board's supervisorial, oversight, and auditing reach included by mutual consent of the Board and the Sheriff and the LASD certain aspects of the Sheriff's conduct, duties and policies.  These included among other things, all aspects of the Sheriff's duties which were managerial, administrative or procedural, rather than those duties which were prosecutorial or enforcement in character.

63.   Among the activities of the COUNTY Sheriff over which the Board of Supervisors has established legal and accepted review, supervision and control as of 1991 and through the relevant dates of this Complaint, are "the policies, practices and procedures of the LASD, including recruitment, training, job performance and evaluation, record keeping and management practices," as they relate to conduct which subjects citizens of the COUNTY, including inmates in custody at COUNTY jail facilities to the custody and control of the COUNTY Sheriff and his subordinates.

64.   At all times since 1991 including the relevant dates of this Complaint, the Sheriff and more particularly, DOE DEFENDANTS 1-3, orally and/or by custom and practice, have acceded, agreed, consented to, admitted the existence of and/or otherwise submitted themselves and the LASD and its operation of MCJ to the authority of the COUNTY Board of Supervisors as it pertains to the aforementioned

1  oversight, supervision, audit, review and control.

2      65.    In so doing, the Sheriff has admitted and is therefore presently legally

3  estopped from asserting otherwise, that the conduct and activities in the COUNTY's

4  MCJ facilities, over which the COUNTY Board of Supervisors presently exercises

5  such oversight, control, supervision and authority, are administrative and procedural

6  and, being administrative and procedural rather than enforcement and prosecutorial

7  in nature, place them and the Sheriff's  department within the legal jurisdiction of the

8  COUNTY as COUNTY Officers, and that in carrying out these extrajudicial actions,

9  the Sheriff and the LASD are not implementing State enforcement or prosecutorial

10  functions outside of the COUNTY Board's authority.

11      66.    The COUNTY Board of Supervisors and the Sheriff have, further,  by

12  agreement, contract,   conduct and fiscal necessity, recognized that all arbitrary,

13  capricious, malevolent, reckless and intentionally harmful conduct of the Sheriff or

14  the LASD which is in no way a part of the punishment explicitly and specifically

15  prescribed by State law or necessary to impose the punishments prescribed by State

16  law, is  not classifiable as an "enforcement" function or a prosecutorial function,  but

17  is a procedural or administrative solution to problems of custody, well within the

18  authority of the COUNTY to supervise and control as COUNTY functions and within

19  the Sheriff's conduct as a COUNTY official.  The LASD, by and through Defendant

20  BACA'S predecessor, in its response to the Koltz report, explicitly acknowledged the

21  right of the COUNTY Board of Supervisors to oversee, review, and audit such

22  extrajudicial conduct.

23      67.    The policies of refusing to protect inmates from known dangers, of using

24  excessive and unnecessary force on inmates, and the policy of failing to provide

25  necessary medical care to an inmate in custody at MCJ does not implement a

26  punishment imposed by State law nor is it required to enforce the punishments

27  actually required by State law.

28      68.    The actual policies cited herein and the training of jail personnel to

enforce these policies, each being a policy implementing punishments imposed by the Sheriff without an order or requirement to impose such punishments under state law, and which remain under the supervisorial umbrella of the COUNTY Board of Supervisors by Sheriff department concession therefore, represent purely COUNTY functions of the Sheriff as a COUNTY officer and have been deemed and treated as such by the COUNTY Board of Supervisors and the COUNTY Sheriff through their mutual agreement, consent, assent, custom and practice as alleged above because:

     a.  they represent implementation of COUNTY administrative and procedural policy;

     b.  they are a series of rules imposing punishments unrelated to the actual punishments imposed by State law or to actions required to enforce the punishments required by State law; and

     c.  they are all applied to custodial jail functions, over which the Los Angeles Board of Supervisors, as acknowledged by the LASD in its reply to the Koltz report already has powers to monitor, audit and intervene and which therefore are by definition COUNTY actions.

    69.    At all relevant times, DOE DEFENDANTS 1-3 each knew or should have known of acts of the nature complained of herein occurring at the COUNTY JAIL came about as a means, method, practice, policy, or custom of: (1) not providing care to inmates; and (2) knowingly and maliciously failing to protect inmates from known deadly dangers to their life and health.  Said defendants knew or in the exercise of reasonable care should have known the practice by their employees including Defendants ANTHONY J. LASCANO (#531103), JI Y. YU (#470249), CHRIS Y. LEE (#623671), ROBERT SAKO (#636469), and DOE DEFENDANTS 26-50 of the arbitrary denial of medical care and failure to protect inmates caused the failure of said individual Defendants herein to monitor and protect Plaintiff from an imminently dangerous encounter with violent inmates, and their failure to timely summon and

provide necessary medical treatment to Plaintiff.   DOE DEFENDANTS 1-3, however, consciously disregarded this knowledge, failed to adequately investigate or discover or discipline and correct such actions or practices, thereby causing the violation of Plaintiff's Constitutional Rights as described herein.

70.    Prior to the incident alleged herein, COUNTY deputies and jailers, including Defendants ANTHONY J. LASCANO (#531103), JI Y. YU (#470249), CHRIS Y. LEE (#623671), ROBERT SAKO (#636469), and DOE DEFENDANTS 26-50, in the course and scope of their employment with COUNTY and the LASD, facilitated, permitted, ratified and condoned similar acts of failing to provide necessary care to sick inmates, and were deliberately indifferent to the health safety of inmates like Plaintiff. DOE DEFENDANTS 1-3 knew or in the exercise of reasonable care should have known of this practice, pattern, or policy of institutional violations, and additionally, of the existence of facts and situations which created the potential of unconstitutional acts, and said Defendants had a duty to instruct, train, supervise and discipline their subordinates to prevent similar acts to other persons, but failed to take action to properly train, instruct, supervise, or discipline Sheriff's deputies, jailers or other employees, including Defendants ANTHONY J. LASCANO (#531103), JI Y. YU (#470249), CHRIS Y. LEE (#623671), ROBERT SAKO (#636469), and DOE DEFENDANTS 26-50, and as a result, Plaintiff was allowed and/or caused to suffer his injuries as alleged in this Complaint.

71.    At all times mentioned herein and prior thereto, DOE DEFENDANTS 1-3 had the duty to train, instruct, supervise and discipline LASD Custody Officers and Employees, including Defendants ANTHONY J. LASCANO (#531103), JI Y. YU (#470249), CHRIS Y. LEE (#623671), ROBERT SAKO (#636469), and DOE DEFENDANTS 26-50, to ensure they respected and did not violate Federal Constitutional and statutory rights of and prisoners and to objectively investigate violations of said prisoners' rights; among these rights being:

a.  the right to be safe and protected from injury while in Defendants'

1            custody;

2                b.   the right to be protected by the deputies while under their control;

3                   and

4                c.   the right to receive medically necessary care.

5       72.     DOE DEFENDANTS 1-3 breached said duties by failing to train,

6 instruct, supervise, or discipline their deputy sheriffs, including Defendants

7 ANTHONY J. LASCANO (#531103), JI Y. YU (#470249), CHRIS Y. LEE

8 (#623671), ROBERT SAKO (#636469), and DOE DEFENDANTS 26-50, on the

9 violation of Plaintiff's and other prisoners' constitutional rights, as alleged herein.

10       73.     The conduct of said Defendants has been ratified, authorized or

11 otherwise condoned by each of them in their official and individual capacities.

12

13                         **FOURTH CAUSE OF ACTION**

14       **VIOLATION OF CIVIL RIGHTS – *MONELL* – 42 U.S.C. § 1983**
                **DEFENDANT COUNTY OF LOS ANGELES**

15       74.     PLAINTIFF repeats and re-alleges each and every allegation contained

16 above as though fully set forth herein.

17       75.     Defendant COUNTY, through Defendants ANTHONY J. LASCANO

18 (#531103), JI Y. YU (#470249), CHRIS Y. LEE (#623671), ROBERT SAKO

19 (#636469), and DOE DEFENDANTS 1-3, 26-50, its administrators and decision

20 makers, knowingly, recklessly, and with reckless disregard for the health and safety

21 of prisoners, including Plaintiff, promulgated, created, maintained, ratified, condoned

22 and enforced a series of policies, procedures, customs and practices which authorized

23 the arbitrary denial of constitutional protections to inmates and detainees at MCJ,

24 including, but not limited to, purposely, wantonly, and recklessly or with deliberate

25 indifference refusing to summon and timely provide necessary medical care to

26 inmates, housing inmates in such a way as to cause and allow them to be attacked by

27 other inmates, and willfully failing to monitor and protect non-violent inmates from

28

violent inmates.  In accordance to the above series of policies, procedures, customs and practices, the following actions including those alleged above, were taken regarding the treatment of Plaintiff.

76.     Defendant COUNTY was further on notice of their wrongful policies by virtue of the Government Claims filed with the County over the last several year arising from deaths and injuries to prisoners resulting from said policies.

77.     Defendant COUNTY was further on notice of their wrongful policies by virtue of the September, 2012, Report by the Citizens' Commission on Jail Violence which set forth in comprehensive detail a history in the LASD of the leaderships failure to respond to recommendations made to improve the Department's treatment of inmates at COUNTY jails, stating, "At a fundamental level, the failure to heed recommendations made -- and advanced repeatedly over time -- is a failure of leadership in the Department."

78.     These policies, procedures, customs and practices of Defendant COUNTY as alleged above were the moving forces behind the de facto custom and practice of permitting and condoning individual LASD deputies and employees such as DEPUTY DEFENDANTS and medical personnel to subject inmates to physical abuse and injury as a form of punishment and discipline as alleged above.  The custom, policy, practice and procedures described herein were a legal cause of Plaintiff's injuries and each individual Defendant, acting in accord with this custom, practice, policy and procedure acted with deliberate indifference to the rights of Plaintiff.  DEFENDANTS acted recklessly and intentionally, under color of law, by showing conscious disregard for the life and safety of Plaintiff and violated Plaintiff's Constitutional rights, and proximately caused the damages set forth in the incorporated paragraphs, all in violation of 42. U.S.C. § 1983.

# FIFTH CAUSE OF ACTION

## NEGLIGENCE
## ALL DEFENDANTS

79.     Except for allegations of intentional conduct, PLAINTIFF hereby repeats, re-alleges and incorporates all allegations above as though fully set forth herein.

80.     Plaintiff is informed and believes and thereon alleges that during all times leading up to the injuries and before medical aid was summoned, said DEFENDANTS did negligently and without due care, fail in their duties to protect Plaintiff by exposing him to, among others, an unreasonable risk of injury at the hands of other violent inmates, and without due care, failed to timely summon medical care or take him to seek appropriate and timely medical care, diagnosis or treatment.

81.     Plaintiff's injuries as alleged occurred as a result of the absence on the part of all said DEFENDANTS of due care for his safety and wellbeing and constituted an unreasonable failure of both statutory, common law, and COUNTY Jail system-imposed duties to protect Plaintiff from known and unreasonable severe risks of physical injury and impairment; and/or resulted from the unreasonable and unjustifiable failures of Defendants DOE DEFENDANTS 26-50 to summon timely and necessary medical aid or to take Plaintiff to receive medical diagnosis or medical care; all manifesting a grossly unreasonable risk of injury to Plaintiff.

82.     The aforesaid conduct of said defendants, and each of them, was done in reckless, unlawful, and/or negligent manner as all defendants, and each of them, knew or should have known that of the dangers Plaintiff was exposed to, any such conduct, omissions and failures to act on their part, was likely to cause Plaintiff's injury.

83.     Defendant COUNTY is liable under the principles of respondeat superior for the aforementioned acts of Defendant Deputies pursuant to California Government Code Section 815.2.

84.     As a proximate result of the aforementioned acts and omissions of said

Defendants and each of them, Plaintiff suffered injuries including the injuries attendant to the assault as well as permanent disfigurement of his right arm, neuropathy, pain, and lack of mobility and ability to use his right hand, tingling and numbness, and mental and emotional harm all to his damages in an amount to be proven at trial.

## SIXTH CAUSE OF ACTION

### NEGLIGENCE – FAILURE TRAIN AND FAILURE TO SUPERVISE COUNTY OF LOS ANGELES AND DOE DEFENDANTS 1-3

85.     Except for allegations of intentional conduct, PLAINTIFF hereby repeats, re-alleges and incorporates all allegations above as though fully set forth herein.

86.     At all times alleged herein, Defendant COUNTY and DOE DEFENDANTS 1-3 failed to adequately train, supervise, discipline or in any other way control whether or not Defendants ANTHONY J. LASCANO (#531103), JI Y. YU (#470249), CHRIS Y. LEE (#623671), ROBERT SAKO (#636469), and DOE DEFENDANTS 26-50 and each of them, fulfilled their Constitutional, common-law, and judicially ordered duties to keep inmates, generally, and Plaintiff, specifically, protected while under their sole care and custody.

87.     Defendant COUNTY and DOE DEFENDANTS 1-3 were also negligent in failing to provide said Deputy Sheriff Defendants, and each of them, the proper and special training necessary for the duties they could foreseeably be expected to perform in the course of their employment in that Defendants ANTHONY J. LASCANO (#531103), JI Y. YU (#470249), CHRIS Y. LEE (#623671), ROBERT SAKO (#636469), and DOE DEFENDANTS 26-50 received inadequate training in the proper use of protective measures to employ which should have been employed in the factual scenario which underlies Plaintiff's injuries which now underlies this lawsuit.

88.     As a proximate result of the aforementioned acts and omissions of said

Defendants and each of them, Plaintiff suffered injuries including the injuries attendant to the assault as well as permanent disfigurement of his right arm, neuropathy, pain, and lack of mobility and ability to use his right hand, tingling and numbness, and mental and emotional harm all to his damages in an amount to be proven at trial.

## VI.
## PRAYER

Wherefore PLAINTIFF prays for judgment as follows:

1.    For general damages, past, present and future as proven at trial;

2.    For medical expenses, past, present and future as proven at trial;

3.    For costs of litigation;

4.    For exemplary damages as against those individuals where alleged;

5.    For reasonable attorney's fees pursuant to 42 U.S.C. § 1988 as to those causes of action brought under 42 U.S.C. § 1983; and

6.    For such other and further relief as the Court may deem just and proper.

DATED:  November 15, 2019        BOUCHER LLP

By: _____

RAYMOND P. BOUCHER
HERMEZ MORENO
BRIAN M. BUSH
Attorneys for Plaintiff Roland Vaughan

FIRST AMENDED COMPLAINT

# VII.
## JURY DEMAND

Plaintiff respectfully demands that the present matter be set for a jury trial.

DATED:  November 15, 2019          BOUCHER LLP


By: _____

RAYMOND P. BOUCHER
HERMEZ MORENO
BRIAN M. BUSH
Attorneys for Plaintiff Roland Vaughan

FIRST AMENDED COMPLAINT